UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX ENI,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>    Respondents. | Case No.: 25-CV-3524 JLS (DEB)<br><br>**ORDER (1) GRANTING IN PART WRIT OF HABEAS CORPUS, AND**<br><br>**(2) DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>(ECF Nos. 1, 2) |

Presently before the Court is Petitioner Felix Eni's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1) and Motion for Temporary Restraining Order ("TRO," ECF No. 2).  Also before the Court is Respondents Kristi Noem's (Secretary of the U.S. Department of Homeland Security), Pamela Bondi's (Attorney General of the United States), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Jesus Rocha's (Acting Field Director, San Diego Field Office), and Christopher LaRose's (Senior Warden of Otay Mesa Detention Center) (collectively, "Respondents") Return in Opposition to the Habeas Petition ("Ret.," ECF No. 9), and Petitioner's Traverse ("Traverse," ECF No. 10).  *See generally* Docket.  For the reasons set forth below, the Court **GRANTS** in part Petitioner's Petition for Writ of Habeas Corpus

(ECF No. 1) and **DENIES AS MOOT** Petitioner's Motion for Temporary Restraining Order (ECF No. 2).

## BACKGROUND

Petitioner, a Nigerian national, entered the United States on a student visa in March of 1980. Pet. at 2. On June 25, 1985, Petitioner was convicted "of misdemeanor theft by deception" for a student loan he improperly took out while in the United States on a student visa. *Id.* A few months after his release, Petitioner was detained by ICE and was deported to Nigeria. *Id.* at 3. In 2001, Petitioner returned to the United States and began working as a nurse in hospice care. *Id.* In 2008, Petitioner was re-detained by ICE, ordered removed to Nigeria, and granted withholding of removal to Nigeria under Section 241(b)(3) of the INA. Ret. at 2. On October 28, 2008, Petitioner was released from ICE custody on an Order of Supervision. *Id.* Petitioner has never missed a check-in appointment, has not violated any terms of his release, and has a work permit and a driver's license. Pet. at 4. Petitioner retired from nursing in 2024 and was working for Lyft and Uber as a ride-share driver until his arrest by ICE in October of 2025. *Id.*

On October 31, 2025,[1] Petitioner was hired as a Lyft driver to drop someone off at Camp Pendleton. *Id.* When Petitioner arrived at the gate, the guards checked his identification, noticed it said "limited"—indicating he is not a U.S. citizen—and took his car registration, keys, and fingerprints. *Id.* The guards then drove him to "another military instillation" where he was met by ICE officers and detained. *Id.* Petitioner "did not receive notice from ICE about why he was being re-detained." *Id.* at 5. Petitioner also was not notified of any changed circumstances making his removal more likely or whether he violated any of the conditions of his release. *Id.* Petitioner was also not provided an "opportunity to contest his re-detention." *Id.*

---

[1] Petitioner alleges his arrest occurred on October 21, 2025, where Respondents allege the arrest occurred on November 1, 2025. *See generally* Pet.; Ret. The Court will use the date Petitioner alleges because the exact date of Petitioner's arrest does not impact the Court's analysis.

2

| | |
|---|---|
| 1 | Respondents allege that on November 1, 2025, Petitioner received a Notice of Revocation of Release and an informal interview.  Ret at 2.  Respondents further state that, since Petitioner's re-detention, "ERO has worked diligently to execute his removal" and that they have contacted "ERO Removal and International Operations (RIO) to seek a third country for removal."  *Id.* at 2–3.  On December 12, 2025, ERO "requested an update on finding a third country," and as of now, "ERO is still pending further response from RIO on identifying a third country for removal."  *Id.* at 3.  Respondents conclude that "[s]hould ERO identify a third country for removal, Petitioner will be notified in writing of the third country at least twenty-four (24) hours prior to removal."  *Id.* |

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90) pending the government's efforts to secure their removal.  *See* 28 U.S.C. § 1231(a)(1).  This ninety-day period is referred to as the "removal period."  § 1231(a)(1)(A).  After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably

necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). ICE may re-detain a non-citizen released on an order of supervised release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may also re-detain if the non-citizen "violates any of the conditions of release." § 241.13(i)(1). If ICE chooses to re-detain, the non-citizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The non-citizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." *Id.*

Here, Petitioner was ordered removed in September of 2008 and granted withholding of removal to Nigeria. Pet. at 3. On October 28, 2008, Petitioner was released on an order

of supervision, presumably, because his removal was not reasonably foreseeable. Ret. at 2; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). On October 31, 2025, while working as a Lyft driver, Petitioner was re-detained by ICE after he was stopped by gate guards at Camp Pendleton. Pet. at 4. The only notice Petitioner received regarding the reasons for his re-detention was a form revocation letter. Traverse at 8; *see also Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). This notice simply states that the revocation was "based on a review of your official alien file and a determination that there are changed circumstances in your case" and that "[y]our case is under current review for removal to an alternate country." Traverse at 8; Ret. Ex. 1. These plain statements are insufficient to provide notice and do not demonstrate what circumstances had changed in Petitioner's case to justify re-detention. *See, e.g.*, *Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case"); *Rokhifirooz v. Larose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (same).

Further, while Respondents allege that Petitioner was provided an informal interview, Ret. at 2, due to the notice's insufficiency, if this interview did occur, Petitioner would not have been informed of the grounds for his revocation to adequately contest the revocation. *See, e.g.*, *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation."); *Rasakhamdee v. Noem*, No. 25-cv-2816-RBM-DEB, 2025 WL 3102037, at *4 (S.D. Cal. Nov. 6, 2025) (finding an identically worded written notification insufficient as "ICE's conclusory explanations for revoking [p]etitioner's release did not offer him adequate notice of the basis for the

revocation decision such that he could meaningfully respond at the post-detention informal interview") (internal quotation marks and citations omitted). "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition." *Sarail A. v. Bondi*, ---- F. Supp. 3d ----, 2025 WL 2533673, at *10 (D. Minn. 2025).

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). The Court finds that, in violation of ICE's regulations, the revocation of his parole without notice or an informed interview justifies **GRANTING** the Petition. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures); *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal. Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025 WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL 2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).

Additionally, even if the procedural requirements were met, the Court is not persuaded that Respondents have showed a change in circumstances such that there is now a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. First, Petitioner has been subject to a final order of removal for seventeen years, and in those seventeen years, there has been no progress on securing his removal. Traverse at 14. Second, Respondents have failed to secure travel documents for Petitioner. Ret. at 3. Rather, Respondents allege that "[s]hould ERO identify a third country for removal, Petitioner will be notified in writing of the third country at least twenty-four (24) hours prior to removal." *Id.* When Petitioner was detained in 2008, he was released because his

1  removal was not reasonably foreseeable, *id.*, and Respondents present no evidence that this
2  has changed. Respondents attempt to argue that the changed circumstances are that "recent
3  developments in international relations between the United States and several other
4  countries have made probable ICE's removal of immigrants, like Petitioner." *Id.* at 4.
5  However, the fact that others have been removed cannot constitute changed circumstances
6  in an individual petitioner's case. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (rejecting the
7  government's argument that ICE's intent to apply for travel documents constituted changed
8  circumstances because they failed to provide "any details about why a travel document
9  could not be obtained in the past, nor have they attempted to show why obtaining a travel
10 document is more likely this time around"); *Phan*, 2025 WL 2898977, at *4 (rejecting the
11 same argument about Vietnamese removal); *Phan v. Warden of Otay Mesa Detention
12 Facility*, No. 25-cv-2369 AJB (BLM), 2025 WL 3141205, at *5 (S.D. Cal. Nov. 10, 2025)
13 (finding no significant likelihood of removal in the reasonably foreseeable future based on
14 the respondents' reliance on the removal of other individuals to Vietnam); *Phouvieng K. v.
15 Andrews*, No. 25-cv-1512-KES-SAB (HC), 2025 WL 3265504 at 6–7 (S.D. Cal. Nov. 24,
16 2025) (rejecting respondents' argument that "ICE has successfully removed aliens with
17 final orders of removal to Laos"). Respondents have not pointed to any third countries that
18 they have contacted to request Petitioner's resettlement, Petitioner is unable to return to his
19 home country of Nigeria, and since Petitioner's detention, there has been no progress made
20 on securing Petitioner's removal. *See* Ret. at 2–3; Traverse at 15–17.
21      Therefore, because Respondents have failed to follow their own regulations in re-
22 detaining Petitioner and have failed to demonstrate that his removal is reasonably
23 foreseeable, the Court **GRANTS** the Petition.

## CONCLUSION

25      Based on the foregoing, the Court **GRANTS** in part Petitioner's Petition for Writ of
26 Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner
27 from custody subject to the conditions of his preexisting Order of Supervision. The Court
28 **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures

set out in 8 C.F.R. § 241.13(i) and other implementing regulations.  The Parties are **ORDERED** to file a Joint Status Report by December 29, 2025, confirming that Petitioner has been released.  The Court **DENIES AS MOOT** Petitioner's Motion for a Temporary Restraining Order (ECF No. 2).  The Clerk of Court **SHALL CLOSE** the case.

**IT IS SO ORDERED.**

Dated:  December 23, 2025

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge